IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| INTERBANK and <br> REAL ESTATE HOLDINGS, LLC, FOR <br> THE BENEFIT OF ITS SERIES B <br>       Plaintiffs, <br> v. <br> <br> PELLETIER MANAGEMENT AND <br> CONSULTING, LLC, <br> GAETAN PELLETIER, individually and <br> as Trustee of the Nancy Pelletier <br> Preservation Trust, and <br> NANCY PELLETIER, individually and <br> as Trustee of the Gaetan Pelletier <br> Irrevocable Trust | § <br> § <br> § <br> § <br> §    Civil Action No. 6:21-cv-24 <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

## COMPLAINT

Plaintiffs, InterBank ("**InterBank**") and Real Estate Holdings, LLC, for the Benefit of Its Series B ("**REH**"), file this Complaint against Pelletier Management and Consulting, LLC. ("**PMC**"), Gaetan Pelletier, individually and as trustee of The Nancy Pelletier Preservation Trust ("**Gaetan**"), and Nancy Pelletier, individually and as trustee of The Gaetan Pelletier Irrevocable Trust ("**Nancy**") and would respectfully show unto the Court as follows:

## PARTIES

1. Plaintiff, InterBank, is an Oklahoma State Banking Corporation with its principal place of business in Oklahoma City, Oklahoma.

2. Plaintiff, Real Estate Holdings, LLC, for the Benefit of Its Series B, is an Oklahoma series limited liability company with InterBank being its sole member. Therefore, REH is a citizen of Oklahoma.

3. Defendant, Pelletier Management and Consulting, LLC, is a Colorado limited liability company doing business in DeWitt County, Texas. PMC's corporate address is 5668

1

Brennan Ave., Colorado Springs, Colorado 80923.  PMC may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as agent for service because PMC has engaged in business in Texas but does not maintain a regular place of business in Texas and this suit arose from PMC's business in Texas.

4. Gaetan Pelletier, in his individual capacity and as trustee for The Nancy Pelletier Preservation Trust, is a resident of California who resides at 1601 Robinhood Road, Vista, California 92084.  Gaetan may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as agent for service because Gaetan has engaged in business in Texas but does not maintain a regular place of business in Texas and this suit arose from Gaetan's business in Texas.

5. Nancy Pelletier, in her individual capacity and as trustee for The Gaetan Pelletier Irrevocable Trust, is a resident of California who resides at 1601 Robinhood Road, Vista, California 92084.  Nancy may be served with process by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as agent for service because Nancy has engaged in business in Texas but does not maintain a regular place of business in Texas and this suit arose from Nancy's business in Texas.

**JURISDICTION AND VENUE**

6. This action is within the original jurisdiction of the United States District Court pursuant to 28 U.S.C. §1332(a)(1) (West).  The statute provides, in pertinent part, that "the district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states."[1]  Venue is proper in this district under 28 U.S.C. § 11391(b)(2) (West) because a

---

[1] 28 U.S.C. § 1332(a)(1).

"substantial part of the events or omission giving rise to the claim" occurred in Cuero, Texas, which is within this district.[2]

## FACTS

7.　　InterBank extended three successive loans to PMC, a closely held company of Gaetean, and at all times during negotiations with InterBank, PMC was represented solely by Gaetan, in his capacities as owner, principal and manager of PMC. The three loans to PMC closed on February 25, 2015, in the amount of $2,000,000 ("**Loan 1**"), April 12, 2016, in the amount of $500,000.00 ("**Loan 2**"), and March 31, 2017, in the amounts of $1,000,000.00 ("**Loan 3**") (collectively herein, the "**Loans**"). *See* Exhibit A. Each of the Loans is secured, among other things, by recorded Deeds of Trust executed by PMC covering the land and improvements, recorded on February 25, 2015, April 26, 2016, and April 7, 2017, respectively (collectively herein, the "**DOTS**"). *See* Exhibit B. The Loans' notes and DOTS are collectively referred to as the "**Loan Documents**."

8.　　The Loans were personally guaranteed by Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable Trust, and Gaetan, in his individual capacity and his capacity as trustee of The Nancy Pelletier Preservation Trust, pursuant to their respective Guaranty Agreements (collectively, the "**Guaranty Agreements**"). *See* Exhibit C.

9.　　The purpose of the Loans to PMC was to provide funds for the construction of a 172-room hotel, to be known as the TexInn Hotel ("**TexInn**"). Subsequently, PMC defaulted on the Loans due to PMC's failure to make payment when due on the Loans. Beginning in March 2018, PMC entered into negotiations with InterBank for a forbearance agreement.

---

[2] 28 U.S.C. §1391(b)(2).

042442.000002
300 - 5880348.1

10. On June 1, 2018, InterBank and PMC entered into a Forbearance Agreement (the "**Forbearance Agreement**"), which granted PMC a one-year period to complete the first phase of the hotel, along with relief from debt service payments on the Loans. *See* Exhibit D. The Forbearance Agreement also provided PMC with an **option** to obtain permanent financing, provided that the permanent loan would be secured, in part, by a priority mortgage on PMC's Ohio property (the "**Ohio Property**"). *See* Exhibit D, p. 6-7. Both Gaetan, in his individual capacity and his capacity as trustee of The Nancy Pelletier Preservation Trust and Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable Trust, were parties to the Forbearance Agreement as guarantors. *See* Exhibit D, p. 9. Further, the Forbearance Agreement contained certain releases whereby PMC, as borrower, and Gaetan, in his individual capacity and his capacity as trustee of The Nancy Pelletier Preservation Trust, and Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable Trust, as guarantors, specifically agreed to "indemnify and hold harmless [InterBank] against any claim, action or cause of action … in connection with any of the representations and warranties [made therein]." *See* Exhibit D, p. 7. Indeed, PMC failed to complete phase-one of the TexInn during the one-year forbearance period, which ended on May 31, 2019. *See* Exhibit D.

11. On June 7, 2019, the Notes, DOTS, and Forbearance Agreement were assigned by InterBank to REH (the "**Assignment**"). *See* Exhibit E.

12. On June 25, 2019, REH and PMC entered into the Modification of Forbearance Agreement (the "**Modified FA**"), which granted PMC an additional sixty (60) days to complete the first phase of construction of the hotel, through August 26, 2019. *See* Exhibit F. Both Gaetan, in his individual capacity and his capacity as trustee of The Nancy Pelletier Preservation Trust and Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable

Trust, were parties to the Modified FA as guarantors. The Modified FA provided, in bold conspicuous font:

> 5.   **AS A MATERIAL INDUCEMENT TO LENDER TO EXECUTE AND DELIVER THIS AGREEMENT, BORROWER HEREBY ACKNOWLEDGES AND AGREES THAT THERE ARE NO CLAIMS OR OFFSETS AGAINST, OR DEFENSES OR COUNTERCLAIMS TO, THE INDEBTEDNESS AND OTHER OBLIGATIONS CREATED OR EVIDENCED BY THE LOAN DOCUMENTS.**

*See* Exhibit F, at p. 2.  In addition, the negotiated loan documents setting forth the exact terms for the permanent financing ("**Permanent Loan Documents**") were attached as an exhibit to the Modified FA.  *See* Exhibit F.

13.   By July 21, 2019, PMC had substantially completed the first phase of the hotel and obtained a Certificate of Occupancy from the City of Cuero.  REH sent the negotiated loan documents setting forth the terms for permanent financing to be provided by InterBank which, again, were attached as an exhibit to the Modified FA, to Gaetan, the manager for PMC.  The day before the permanent financing was scheduled to close, PMC, through Gaetan, complained about the terms of the loan and did not sign the negotiated loan documents.  Specifically, in an email to an InterBank employee, Tony Levatino, Gaetan insisted that the negotiated loan documents were inaccurate and demanded to renegotiate the terms of the permanent financing that PMC already agreed upon with REH and InterBank.  Accordingly, no permanent financing agreement was ever consummated between REH and/or InterBank and PMC because PMC rejected the previously agreed upon terms for permanent financing just one day prior to the scheduled closing of the permanent financing option as provided in the Modified FA.  Still, REH and InterBank negotiated with Gaetan, as manager for PMC, in good faith in order to resolve PMC's concerns about the terms of permanent financing, despite the fact that PMC had already previously agreed to the core terms of permanent financing as stated in the Forbearance Agreement and Modified FA.

14. Then, on August 13, 2019, just days before Modified FA terminated by its terms, Nancy and Gaetan encumbered PMC's Ohio Property by leasing the Ohio Property to Applewood Log Homes, LLC ("**Applewood**"). *See* Exhibit G. Applewood is an entity controlled by none other than Gaetan and his immediate family.[3] Curiously, PMC did not provide REH with a copy of the lease to Applewood (the "**Applewood Lease**") until September 2, 2019.[4] And although the Applewood Lease states it is effective as of March 15, 2012, the signatures on the lease were not notarized until August 13, 2019.[5] *See* Exhibit G. The Applewood Lease was unrecorded.

15. On or about September 2, 2019, Gaetan for the first time informed REH and InterBank, through InterBank and REH's attorney, of the Applewood Lease and provided a copy of the Applewood Lease to REH's attorney. On September 2, 2019, Gaetan also informed REH and InterBank that the Applewood Lease had been assigned to a new tenant, Applewood Log Homes Sales, LLC ("**Applewood Sales**") via a lease assignment agreement (the "**Lease Assignment**"). *See* Exhibit H. The Lease Assignment, on its face, states that it was executed on January 20, 2019, however, the signatures of Gaetan and Byrne are dated and notarized on August 24, 2019. *See* Exhibit H. The Lease Assignment was also not recorded in the real property records.

16. The Applewood Lease and Lease Assignment were in direct tension with the material terms and conditions to consummate the option for permanent financing as provided for in the Forbearance Agreement, namely the requirement that PMC deliver priority lien on the Ohio Property to InterBank. *See* Exhibit D, at p. 6-7. It follows that since Gaetan, Nancy, and PMC unilaterally and without notice to InterBank placed two encumbrances on the Ohio Property (i.e.,

---

[3] Gaetan executed the Applewood Lease on behalf of Applewood, as lessee, and Nancy executed the Applewood Lease as a member of PMC, the lessor.
[4] Upon information and belief, InterBank believes that Gaetan executed the Applewood Lease as an attempt to prevent REH from obtaining superior lien to the Ohio Property.
[5] Interestingly, the notary witness for the Applewood Lease was Gaetan's daughter, Ashley Byrne ("**Byrne**"). Byrne often serves as notary of legal documents signed by PMC, Gaetan, and Nancy.

the Applewood Lease and Lease Assignment), PMC would not be able to satisfy the requirements and conditions for permanent financing. The Applewood Lease and Lease Assignment created encumbrances on the Ohio Property, which was a breach of the Loan Documents and Forbearance Agreement. Moreover, The Intervenor-Defendants fraudulently concealed the Applewood Lease and Lease Assignment from REH and InterBank when obtaining the Loans from InterBank and entering into the Forbearance Agreement and the Modified FA.

17. Then, still attempting to work with PMC in good faith, InterBank informed PMC that a lien subordination from Applewood Sales would be a necessary term of any permanent financing agreement to reconcile the reduction of the collateral value of the Ohio Property due to the encumbrances. However, Gaetan, Nancy and their family, through Applewood Lease, refused, demanding a non-disturb clause—a term that InterBank simply could not agree to accept.[6] *See* Exhibit I. The Applewood Lease and Lease Assignment are not on market terms and were unacceptable encumbrances on the Ohio Property that resulted in a significant reduction in value of the collateral.[7]

18. As such, PMC remained in default indefinitely and, as a logical consequence, the requisite notices were issued and a non-judicial foreclosure sale of the property in De Witt County, commonly known as the TexInn, was held on November 5, 2019, with REH taking possession of the Property as the highest bidder.[8]

19. Gaetan, proceeding *pro se*, commenced an action against InterBank and REH contesting the foreclosure of the Property, asserting a litany of claims based on the Forbearance

---

[6] Indeed, obtaining priority lien on the financed property is a common industry practice for banks and financial institutions. Surely, no bank or financial institution would lend millions of dollars without properly obtaining security for such monies.
[7] And again, it is important to note that Applewood and Applewood Sales are controlled by Gaetan, PMC's principal and owner, and Gaetan's daughter, Byrne, respectively.
[8] The foreclosure sale took place on Tuesday, November 5, 2019.

Agreement and Modified FA, including claims for breach of contract, negligence, gross negligence, fraud, fraudulent inducement, fraud by nondisclosure, tortious interference with existing contract, duress, and economic duress, and seeking a declaration that the Forbearance Agreement and Modified FA are void and invalid (the "**Gaetan Lawsuit**"). In the Gaetan Lawsuit, Gaetan claimed it was he, not PMC, constructing the TexInn subject to a Land Lease Agreement between Gaetan, in his individual capacity, and PMC. Gaetan asserted that the land was owned by PMC and the building on the land was owned by Gaetan and was his personal property. Judge Hoyt ordered Gaetan to join all necessary parties, and Gaetan joined PMC. Gaetan served PMC, but neither Gaetan nor Nancy hired an attorney to represent PMC. In the Memorandum and Order Granting Motion to Dismiss in the Gaetan Lawsuit, the United States District Court for the Southern District of Texas, Victoria Division, dismissed the Gaetan Lawsuit. *See* Exhibit J.

20. On October 2, 2020, PMC filed suit against InterBank and REH in Dallas County district court asserting nearly identical claims for breach of contract and negligent misrepresentation as in the Gaetan Lawsuit. InterBank and REH removed the lawsuit to federal court in the Northern District of Texas, Dallas Division (the "**Dallas Lawsuit**"). InterBank and REH separate motions to dismiss. On March 25, 2021, Judge Starr ordered the parties to show cause why venue was proper in the Northern District of Texas, Dallas Division. On March 27, 2021, the Receiver filed Receiver's Unopposed Motion to Dismiss in the Dallas Lawsuit.

21. Both InterBank and REH incurred substantial attorneys' fees in defending their respective rights under the Loan Documents, Forbearance Agreement, and Modified FA in both the Gaetan Lawsuit and Dallas Lawsuit.

## CAUSES OF ACTION

22.     Paragraphs 1-25 are incorporated herein by reference. REH and InterBank sue PMC, Gaetan, in his individual capacity and his capacity as trustee of The Nancy Pelletier Preservation Trust, and Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable Trust, for breach of contract and fraud.

23.     The Loan Documents define the following events as Events of Default:

> **12. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:
> **A. Payments.** I fail to make a payment in full when due.
> **B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.
> **C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.
> **D. New Organizations.** Without your written consent, I organize, merge into, or consolidate with an entity; acquire all or substantially all of the assets of another; materially change the legal structure, management, ownership or financial condition; or effect or enter into a domestication, conversion or interest exchange.
> **E. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.
> **F. Other Documents.** A default occurs under the terms of any other Loan Document.
> **G. Other Agreements.** I am in default on any other debt or agreement I have with you.
> **H. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.
> **I. Judgment.** I fail to satisfy or appeal any judgment against me.
> **J. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.
> **K. Name Change.** I change my name or assume an additional name without notifying you before making such a change.
> **L. Property Transfer.** I transfer all or a substantial part of my money or property.
> **M. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.
> **N. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.
> **O. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

24.     PMC defaulted under the terms of Loan Documents under Sections 12(D), (E), (F), (H), (L), (M) and (N). PMC breached Sections 12(D) and (N) by changing the legal structure, management ownership, and financial condition of the TexInn and PMC and further encumbering the collateral securing the loans, including the Ohio Property. PMC made many misrepresentations about its financial condition in obtaining the Loans, in breach of Section 13(H). By encumbering the Ohio Property with the "secret" Applewood Lease and Lease Assignment,

9

the value of the Ohio Property decreased, in breach of Sections 12(L) and (M). PMC failed to perform under the terms of Loan Documents by failing to make payment when the Loans matured on August 26, 2019, failing to pay property taxes, and failing to insurance the various properties that served as collateral for the Loans, in breach of Sections 12(E) and (F).

25.    REH, lawful owner and holder of the above-referenced Loan Documents, brings claims for breach of contract against PMC, Gaetan, in his individual capacity and his capacity as trustee of The Nancy Pelletier Preservation Trust, and Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable Trust, to obtain the remaining balance due and owing under the Loans and Guaranties as a result of PMC default. The total amount due under the Note and Mortgage was $1,355,969.12 as of May 13, 2021, which was comprised of $1,138,230.05 in principal, $211,773.33 in accrued and unpaid interest, and $5,965.74 in unpaid property protection advances and collection costs (including reasonable attorneys' fees). Under the terms of the Note and Mortgage, additional interest will accrue on the unpaid principal balance at the default rate of 6.5000% per day, for a per diem rate of $202.70.

26.    PMC also breached the Loan Documents by failing to "to pay all expenses of collection, enforcement or protection of [InterBank's and REH's] rights and remedies under [the] Note or any other Loan Document." *See* Exhibit A. Specifically, both the Gaetan Lawsuit and the Dallas Lawsuit required InterBank and REH to incur attorneys' fees defending the lawsuits to protect InterBank's and REH's rights and remedies under the Loan Documents. The Gaetan Lawsuit was brought to prevent the foreclosure of the TexInn, with Gaetan, in his individual capacity, asserting that REH's foreclosure was effective only as to the land, but not the building, which Gaetan claimed was his personal property.

27.     The Guaranty Agreements for Loan 1 and Loan 2 provide as follows:

> **2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.
>
> A promissory note or other agreement, No. 20123872, dated April 12, 2016, from PELLETIER MANAGEMENT AND CONSULTING, LLC (Borrower) to you, in the amount of $500,000.00.
>
> In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.
>
> You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

Gaetan, in his individual capacity and his capacity as trustee of The Nancy Pelletier Preservation Trust, and Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable Trust, breached the Guaranty Agreements as a result of not making payment on the Loans when the Loans matured, and PMC failed to pay the Loans. Under the terms of the Guaranty Agreements for Loan 1 and Loan 2, Gaetan, in his individual capacity and his capacity as trustee of The Nancy Pelletier Preservation Trust, and Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable Trust are also both liable for the attorneys' fees incurred by InterBank and REH in defending their rights under the terms of the Loan Documents in both the Gaetan lawsuit and Dallas Lawsuit. The primary purpose of the Gaetan Lawsuit was to stop/delay/impede the foreclosure of the Cuero, Texas property, thereby forcing InterBank and REH to defend their rights under the Loan Documents.

28.     Additionally, Gaetan, in his individual capacity, and Nancy, in her individual capacity, breach the terms of the Guaranty Agreement for Loan 3 by failing "promptly paying at maturity, and all times thereafter, of said indebtedness, including interest thereon, and all costs, attorney's fees, and expenses which may be suffered by [InterBank and REH] by reason of

[PMC's] default in the payment of said indebtedness or the default of the undersigned hereunder," specifically the balance of the Loans when the Loans matured on August 26, 2019 and the attorneys' fees and costs incurred by InterBank and REH in the Gaetan Lawsuit and Dallas Lawsuit.  *See* Exhibit A.

29.     InterBank and REH also sue PMC, Gaetan, in his individual capacity and his capacity as trustee of The Nancy Pelletier Preservation Trust, and Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable Trust, for fraud.  Intervenor Defendants represented to InterBank and REH that the Ohio Property was free of any encumbrances in obtaining Loan 3.  Intervenor Defendants concealed the unrecorded Applewood Lease and Lease Assignment from InterBank at the time InterBank extended Loan 3 to PMC and entered the Forbearance Agreement.  The Applewood Lease and Lease Assignment were encumbrances on the title which devalued the Ohio Property, which served as Collateral for Loan 3.  Intervenor Defendants intended for InterBank to rely on the misrepresentation that the Ohio Property was free of encumbrances to serve as collateral for Loan 3, and InterBank did rely on this misrepresentation when InterBank entered Loan 3 with PMC and with Gaetan, in his individual capacity, and Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable Trust, as guarantors of Loan 3.  InterBank and REH have suffered damages as a result.

30.     All conditions precedent to InterBank's and REH's right to bring this lawsuit and recover from PMC, Gaetan, in his individual capacity and his capacity as trustee of The Nancy Pelletier Preservation Trust, and Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable Trust, have been performed or have occurred.

31.     InterBank and REH have incurred attorneys' fees, costs, and expenses as a result of defending their rights in this matter.  Consequently, InterBank and REH also seek to recover

042442.000002
300 - 5880348.1

their attorneys' fees, costs, and expenses from PMC, Gaetan, in his individual capacity and his capacity as trustee of The Nancy Pelletier Preservation Trust, and Nancy, in her individual capacity and her capacity as trustee of The Gaetan Pelletier Irrevocable Trust.

## DAMAGES

InterBank and Real Estate Holdings, LLC, for the Benefit of Its Series B, respectfully request the Court enter judgment in favor of Plaintiffs against Defendants as follows:

a. awarding Plaintiffs actual damages in at least the amount of $1,355,969.12, plus accrued interest and expenses;

b. awarding Plaintiffs exemplary damages in amount to be determined at trial for the fraudulent conduct of Defendants; and

c. awarding Plaintiffs their reasonable and necessary attorneys' fees, pre- judgment interest at 18% per annum or the highest rate allowed by law, and post- judgment interest at the statutory rate.

Respectfully submitted,

CRAIN, CATON & JAMES, PC

By: /s/ *William P. Huttenbach*
William P. Huttenbach
State Bar No. 24002330
Southern District ID No. 21742
1401 McKinney, Suite 1700
Houston, Texas 77010-4035
713-658-2323 Main
713.658.1921 Fax
whuttenbach@craincaton.com

**ATTORNEYS FOR PLAINTIFFS, INTERBANK AND REAL ESTATE HOLDINGS, LLC, FOR THE BENEFIT OF ITS SERIES B**

OF COUNSEL:
Kristina L. Cunningham
State Bar No. 24049712
Southern District ID NO. 3101941
Crain, Caton & James, PC
1401 McKinney, Suite 1700
Houston, Texas 77010-4035
713.752.8643 KLC Direct
kcunningham@craincaton.com